# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JOHN UNDERWOOD, Plaintiff, v. GENENTECH, INC., Defendant. | CIVIL ACTION NO. 03-3983 |

Diamond, J.                                                                October 5, 2010

## MEMORANDUM OPINION

In this *qui tam* action, Relator John Underwood charges that Defendant Genentech, Inc. illegally marketed off-label uses of the prescription drug Rituxan. Relator has asked me to order the release of all grand jury transcripts generated during the Government's five-year criminal investigation of Relator's allegations. *(Doc. No. 104.)* That investigation concluded two years ago without the return of an indictment.

Relator argues primarily that because he was precluded from taking discovery during the Government's unnecessarily prolonged civil investigation of Genentech, the grand jury alone will have heard from critical witnesses when their recollections were fresh and accurate. Accordingly, Relator seeks disclosure of the grand jury testimony because he believes that at this late date the traditional civil discovery available to him will be inadequate and burdensome.

I will deny Relator's Motion without prejudice because it is premature. If traditional discovery confirms Relator's concerns respecting witness recollection and the like, Relator may renew his disclosure request on a witness-by-witness basis.

*1*

I. **BACKGROUND**

Defendant Genentech, Inc. is a California biotechnology company that developed and markets Rituxan, a prescription drug approved by the FDA to treat non-Hodgkin's lymphoma. From 1997 until 2005, Genentech employed Relator John Underwood as a sales manager and senior hospital systems specialist. *(Id. ¶ 2.)*

In 2003, Relator informed the Department of Justice that Genentech was defrauding Medicare and Medicaid by paying kickbacks to healthcare providers that prescribed Rituxan for off-label use. *(Doc. No. 63, Ex. A ¶¶ 10, 14.)* According to Relator, Rituxan's off-label use generates over half the Medicare and Medicaid monies paid to the Company—hundreds of millions of dollars. *(Id. ¶ 14.)*

On July 3, 2003, Relator filed the instant *qui tam* action under seal, alleging violations of the False Claims Act through underlying violations of the Medicare and Medicaid Fraud and Abuse Act. See 31 U.S.C. §§ 3729 *et seq.*; 42 U.S.C. §§ 1320 *et seq.* As the False Claims Act requires, Relator served the United States—on whose behalf he is proceeding—with his Complaint so that it could decide whether to intervene. *(Doc. No. 1.)* Because Relator's Complaint could not be served until after the Government's intervention decision, Relator could not proceed with discovery. See 31 U.S.C. § 3730(b)(2).

Pursuant to an order granting the Government's Motion for Extension of Seal, the matter was stayed and sealed for six months. *(Doc. No. 3.)* For the next six years, the Government successfully sought seven extensions of the sealing order while it conducted its civil investigation, including its review of some seven million documents. On

2

September 25, 2009, the United States filed a Notice of Election to Decline Intervention. *(Doc. No. 29.)*

The DOJ's Criminal Division also began an investigation of Genentech in 2003. Through 2008, a grand jury sitting in this District investigated Relator's allegations, concluding without the return of an indictment. *(See Doc. No. 111 at 1.)*

Relator has elected to continue this *qui tam* action against Genentech. On June 8, 2010, he filed a Second Amended Complaint in which he alleged, *inter alia*, that Genentech engaged in the illegal kickback scheme from 2000 through 2005. *(See Doc. No. 80 at 5, ¶17.)* On December 18, 2009, I granted Genentech's Motion to Unseal the Case. *(Doc. Nos. 45, 56.)*

On August 30, 2010, Relator filed a Motion for Disclosure of Grand Jury Transcripts, asking me, pursuant to Rule 6(e), to order the disclosure of all grand jury testimony taken in connection with the investigation of Genentech. See Fed. R. Crim. P. 6(e). *(Doc. No. 104.)* I granted a Consent Motion to Seal Relator's Motion and all responses. *(Doc. No. 109.)* A series of briefs have since been filed under seal: Genentech's Opposition to Relator's Motion for Disclosure of Grand Jury Transcripts, *(Doc. No. 110)*; the Government's Opposition to Relator's Motion, *(Doc. No. 111)*; and Relator's Reply in Further Support of the Motion for Disclosure, *(Doc. No. 118)*.

Unnamed Third Parties who provided testimony before the grand jury or had some other connection to the investigation also oppose disclosure of the transcripts. *(Doc. No. 119.)* The Relator disputes whether these individuals have standing to be heard. *(Doc. Nos. 120-23.)* On September 22nd, 2010, I ordered each Third Party to explain to me the basis for his or her claim of standing. *(Doc. No. 125.)* Acting pursuant to Local Rule of

Criminal Procedure 6.1(c)(3)—ensuring grand jury secrecy—some eleven lawyers representing approximately 25 individuals offered *ex parte* letter briefs that were placed under seal. *(Doc. Nos. 126-130, 132-136.)* Relator has objected to the Third Parties' refusal to provide him with copies of their submissions. *(Doc. No. 131.)*

## II. Legal Standards

> Over 90 years ago, the Supreme Court explained that the federal grand jury is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.

Blair v. United States, 250 U.S. 273, 282 (1919).

Convened by the court, but acting almost entirely at the prosecutor's direction, the grand jury has been likened to a fourth branch of government. See United States v. Williams, 504 U.S. 36, 47 (1992) ("[T]he grand jury is mentioned in the Bill of Rights, but not in the body of the Constitution. It has not been textually assigned, therefore, to any of the branches described in the first three Articles. It 'is a constitutional fixture in its own right.'" (quoting United States v. Chanen, 549 F.2d 1306, 1312 (9th Cir. 1977))); O'Bryan v. Chandler, 249 F. Supp. 51, 55 (N.D. Okla. 1964) ("[A] grand jury has no existence aside from the court which calls it into existence and upon which it is attending."), aff'd 352 F.2d 987 (10th Cir. 1965), cert. denied, 384 U.S. 926 (1966).

4

The Supreme Court has emphasized that grand jury secrecy is "'a long-established policy' . . . older than our Nation itself." Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399 (1959) (quoting United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958)). The Court has thus observed that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 218 (1979). Secrecy serves several important interests:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

Procter & Gamble, 356 U.S. at 681-82 n.6 (quoting United States v. Rose, 215 F.2d 617, 628-29 (3d Cir. 1954)).

Courts have reiterated the need to maintain grand jury secrecy even after an investigation has concluded. See Douglas Oil, 441 U.S. at 222 ("For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the

5

functioning of future grand juries. . . . Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities."); see also Hernly v. United States, 832 F.2d 980, 985 (7th Cir. 1987). Indeed, so compelling is the need for secrecy that courts have refused requests for the public disclosure of grand jury materials related to matters of historic significance even when the Government has joined in the disclosure request. See, e.g., Hiss v. Dep't of Justice, 441 F. Supp. 69 (S.D.N.Y. 1977). But see In re Petition of Craig, 942 F. Supp. 881 (S.D.N.Y. 1996), aff'd, 131 F.3d 99 (2d Cir. 1997).

Although Rule 6(e) prohibits the disclosure of any "matter occurring before the grand jury," there are exceptions. For instance, courts may authorize disclosure "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). A party seeking disclosure of grand jury materials under this exception must show (1) that the materials sought are necessary to avoid possible injustice in another proceeding, (2) the need for disclosure is greater than the need for secrecy, and (3) the request is structured to cover only those materials satisfying the first two requirements. See Douglas Oil, 441 U.S. at 222; see also In re Grand Jury Matter, 697 F.2d 511, 513 (3d Cir. 1982) ("[D]isclosure is only permissible if . . . the three pronged test enunciated by the Supreme Court in [Douglas Oil] is satisfied.").

Once the party seeking disclosure makes this showing, the district court "must weigh the competing interests and order so much disclosure as needed for the ends of justice." In re Grand Jury Matter (Catania), 682 F.2d 61, 64 (3d Cir. 1982). The district court has "substantial discretion" in balancing the competing interests of disclosure and secrecy. See id.

6

## III. DISCUSSION

Relator seeks disclosure pursuant to Rule 6(e)(3)(E)(i). I agree that the instant *qui tam* action constitutes a "judicial proceeding" within the meaning of the Rule. See In re Sealed Motion, 880 F.2d 1367, 1379 (D.C. Cir. 1989). At this stage, however, I do not agree that disclosure is warranted.

### A. The Avoidance of Injustice

Having reviewed the initial submission of the Third Parties and other publicly available information, Relator contends that the need to maintain grand jury secrecy has long passed. Genentech has itself publicly disclosed the existence of the grand jury investigation. *(See Doc. No. 118 at 4.)* Relator believes that "at least thirteen key Genentech employees testified before the grand jury." *(Doc. No. 118 at 7.)* Relator also believes that "many (if not all) of [the employees'] lawyers were paid by, and probably debriefed by, Genentech's counsel." *(Id.)* The resulting information disparity between Relator and Genentech puts Relator "at a distinct disadvantage . . . . [that] alone is a sufficient need to justify disclosure to Relator of the grand jury transcripts and related exhibits." *(Id.)* Relator is also concerned that over the years "[i]t is inevitable that the recollections of [the key] employees that will be deposed and likely testify at trial in this case have degraded overtime." *(Id.)* Finally, Relator contends that the "prolonged discovery" required to replicate the grand jury investigation is an "undue burden." *(Doc. No. 104 at 2, ¶7.)*

Courts have generally declined to find injustice when the information presented to the grand jury is available through customary discovery. See, e.g., United States v. Rutherford, 509 F.3d 791, 794 (6th Cir. 2007) (requiring party seeking disclosure to show that information in grand jury material is not available through discovery); Lucas v. Turner, 725 F.2d 1095, 1102 (7th Cir. 1984) (same); Sun Dun Inc. of Wash. v. United States, 766 F. Supp. 463, 467 (E.D. Va. 1991) (same). Moreover, the time and expense of conventional discovery usually will not outweigh the need to maintain grand jury secrecy:

> If the grand jury transcript were made available, discovery through depositions, which might involve delay and substantial costs, would be avoided. Yet these showings fall short of proof that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done.

Procter & Gamble, 356 U.S. at 682.

Relator's more troubling suggestion is that essential testimony may be unavailable through discovery because of the Government's unnecessarily long civil investigation of this matter. The Government has not explained why it needed six years to conduct its investigation, nor does it dispute that Relator was unable to proceed with his own discovery until it declined intervention. See 31 U.S.C. § 3730(b)(2), (3); see also United States ex rel. Woods v. N. Ark. Reg'l Med. Ctr., No. 03-3086, 2006 WL 2583662, at *4 (W.D. Ark. Sept. 7, 2006) (denying the Government's fifth request for an extension of time to investigate *qui tam* allegations because "the United States has had ample opportunity to determine whether the claims at issue have merit and to elect to pursue

8

them"); United States ex rel. Costa v. Baker & Taylor, Inc., 955 F. Supp. 1188, 1192 (N.D. Cal. 1997) ("[T]he relative ease of granting, rather than denying, [Government requests for extended time to investigate *qui tam* allegations] may too often lead courts to prolong unnecessarily the period of the seal.").

It would be quite troubling if the Government's prolonged civil investigation of this matter—combined with its refusal to disclose materials gathered during its almost equally prolonged grand jury investigation—impaired Relator's ability to proceed on his own. In such circumstances, disclosure of at least some grand jury material could well be warranted to prevent a possible injustice. See In re Corrugated Container Antitrust Litig., 687 F.2d 52, 55 (5th Cir. 1982) (upholding release of grand jury transcripts where information was otherwise unavailable).

Until Relator deposes the Genentech employees who testified before the grand jury, I cannot determine whether Relator's concerns regarding fading memory and the like are warranted. Accordingly, I conclude that Relator has not yet established that disclosure of the grand jury materials is necessary to prevent an injustice.

### B. Need for Disclosure vs. Need for Secrecy

Relator believes that in addition to his need for grand jury materials to refresh witness recollections, he "may need to use the contents of the transcripts to impeach persons who testified before the grand jury, many of whom are likely to be called in Relator's case as hostile witnesses." *(Doc. No. 104 at 3.)* As the Federal Rules contemplate, however, Relator can likely develop "impeachment" material through customary civil discovery. This is why courts have generally limited disclosure of grand

9

jury materials to criminal actions, where the defendants have no independent means of discovery. See, e.g., United States v. Hayes, 376 F. Supp. 2d 736, 742 (E.D. Mich. 2005) (disclosing grand jury testimony of a police officer whose trial testimony was the only evidence against the defendant and who had previously been accused of falsifying police reports); see also In re Grand Jury Proceedings, 503 F. Supp. 2d 800, 805 (E.D. Va. 2007) ("Merely intoning the words 'impeachment' and 'refreshing recollection' like a talismanic password does not entitle a movant to Rule 6(e) material.").

Although the need for grand jury secrecy moderated once the Genentech investigation concluded, as I have discussed, it is not eliminated. See United States v. Sobotka, 623 F.2d 764, 767 (1st Cir. 1980) ("We conclude that while the necessity here be less compelling in view of the termination of the grand jury, nonetheless some necessity need be shown by the party seeking disclosure."). Maintaining secrecy is especially important where the investigation has ended without the return of an indictment. See In re Special Grand Jury 89-2, 143 F.3d 565, 572 (10th Cir. 1998); United States v. Fischbach & Moore, Inc., 776 F.2d 839, 844 (9th Cir. 1985).

In sum, I conclude that at this stage, the interests compelling grand jury secrecy outweigh Relator's interest in obtaining the transcripts. Once again, that calculus may change after Relator begins deposition discovery in this matter.

### C. Narrowly Structured Request

The disclosure of grand jury materials must be sought "with particularity so that the secrecy of the proceedings [may] be lifted discretely and limitedly." Douglas Oil, 441 U.S. at 221 (internal quotation marks omitted). Courts thus commonly deny blunderbuss

disclosure requests. See United States v. Campbell, 324 F.3d 497, 499 (7th Cir. 2003) (affirming the denial of an untailored request "for all transcripts of all [grand jury] testimony"); see also In re Special Grand Jury 89-2, 143 F.3d at 567 ("[A] district court must evaluate the need for disclosure of grand jury testimony on a witness-by-witness basis.").

Although Relator is interested in obtaining review of the grand jury testimony of at least thirteen Genentech employee-witnesses, he has sought the disclosure of all grand jury transcripts. Relator himself worked in sales for Genentech throughout the years he alleges the kickbacks were paid. Accordingly, Relator can likely identify at least some of these employee-witnesses. Moreover, as I have discussed, Relator's disclosure request is premature. If discovery reveals that significant testimony is no longer available except through disclosure of grand jury material, Relator may renew his request witness by witness. Such an approach would likely meet the Douglas Oil particularized need requirement. Relator's instant disclosure request does not.

### D. Third Parties

"[I]ndividuals who provided testimony before the grand jury that is the subject of Relator's Motion, who have been referenced by other witnesses before the grand jury, and/or who were otherwise involved in the grand jury's investigation" oppose Relator's Disclosure Motion. *(Doc. No. 119.)* Relator argues that the Third Parties are without standing here. *(Doc. No. 120.)* Although Relator appears to be correct—at least with respect to the great majority of the Third Parties—in light of my decision to deny Relator's Motion, I need not determine the standing question. Even if I afforded the Third

11

Parties standing, however, they do not contribute to the debate materially. Their letter brief in opposition to the Motion *(Doc. No. 119)* includes only an abbreviated analysis that is completely subsumed by the submissions of Genentech and the Government.

## IV. CONCLUSION

For these reasons, I will deny Relator's Motion for Disclosure of Grand Jury Transcripts without prejudice.

An appropriate Order follows.

BY THE COURT.

_____
**Paul S. Diamond, J.**